Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| RICHARD SANTANA VILLANUEVA y su esposa LIZZIE MEDINA CORIS<br><br>Demandantes-recurridos<br><br>V.<br><br>MOMENTUM GROUP LLC., MARIO J. ROLDÁN DEL CUETO y OTROS<br><br>Demandados-recurrentes | TA2026CE00775 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Civil Núm. DO2026CV00033<br><br>Sobre: DAÑOS y OTROS |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 24 de junio de 2026.

El 17 de junio de 2026, el Sr. Mario J. Roldán del Cueto (señor Roldan o peticionario) compareció ante nos mediante un recurso de *Certiorari* y solicitó la revisión de una *Resolución Interlocutoria* que se emitió y notificó el 28 de mayo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). En virtud del aludido dictamen, el TPI declaró No ha lugar la *Moción de Desestimación* presentada por el peticionario el 6 de mayo de 2026.

Por los fundamentos que expondremos a continuación, **denegamos** el recurso de epígrafe.

I.

El 9 de febrero de 2026, el Sr. Richard Santana Villanueva (señor Santana) y su esposa la Sra. Lizzie Medina Coris (señora Medina) (en conjunto, los recurridos) presentaron una *Demanda* sobre: (1) incumplimiento de contrato; (2) negligencia; (3) dolo y falsas representaciones, nulidad de contrato; (4) cobros indebidos y

enriquecimiento injusto; (5) daños morales y angustias mentales; y (6) responsabilidad personal y solidaria, en contra de Momentum Group LLC (Momentum) y su presidente, el señor Roldán, en su carácter personal.[1]

En esencia, alegaron que, el 4 de noviembre de 2024, suscribieron un contrato con Momentum intitulado *Residential Remodeling/Construction Contract* para la remodelación, ampliación y construcción de la residencia de los recurrentes. Señalaron que, previo y al momento de la contratación, Momentum, por conducto de su presidente, el señor Roldán, se presentó como una entidad capacitada que contaba con la experiencia, el personal y los recursos económicos necesarios para ejecutar una obra de la magnitud y complejidad contratada.

No obstante, puntualizaron que, desde las fases iniciales del proyecto, se evidenció una falta de planificación, supervisión técnica y control de calidad, manifestada, entre otros aspectos, en atrasos reiterados, errores básicos de ejecución y la ausencia de personal cualificado y supervisión competente en la obra. Asimismo, indicaron que Momentum causó daños directos a la propiedad, al igual que ejecutó trabajos que no cumplían con los estándares mínimos de la industria, lo cual requirió correcciones posteriores, demoliciones y reprocesos.

A pesar de ello, esgrimieron que Momentum presentó y cobró múltiples certificaciones de progreso que no reflejaban de forma precisa ni honesta el estado real de avance de la obra. Además, adujeron que la entidad se había comprometido a entregar la obra para el mes de julio de 2025, lo cual no realizó, pero que esta luego le representó que estaría completada aproximadamente un noventa y ocho por ciento (98%) para el mes de septiembre. No obstante,

---

[1] *Véase*, Entrada Núm.1, SUMAC TPI.

esgrimieron que para esta fecha tampoco cumplió y fue pospuesta nuevamente para noviembre, lo cual no se materializó, hasta que fue despedido del proyecto en diciembre de 2025.

Así pues, esbozaron que, tras la remoción de Momentum del proyecto, el contratista que asumió la continuación de la obra ha identificado errores graves, deficiencias sistémicas y trabajos defectuosos que representaban un peligro para los residentes. De igual forma, manifestaron que, al momento de la contratación y durante la ejecución del proyecto, Momentum no cumplía con los requisitos de registro como contratista ante el Departamento de Asuntos del Consumidor (DACo). Incluso, señalaron que el señor Roldán no era un ingeniero con licencia expedida por el Colegio de Ingenieros y Agrimensores, a pesar de que en todo momento dejó la impresión de que lo era.

Por lo cual, solicitaron al TPI que:

(a) Encuentre a Momentum Group, LLC haber incurrido en incumplimiento de contrato al no haber ejecutado la obra conforme a lo pactado ni a los estándares mínimos de diligencia exigibles;

(b) Encuentre a los demandados haber incurrido en negligencia al ejecutar trabajos defectuosos y peligrosos, causando daños previsibles y evitables al demandante.

(c) Encuentre a los demandados haber incurrido en dolo contractual al inducir al demandante a realizar pagos bajo representaciones incorrectas;

(d) Encuentre a los demandados solidariamente responsables por los daños sufridos y reclamados por los demandantes y así condenándolos al pago de no menos de $587,688.79, y una suma adicional por concepto de costas, gastos y honorarios de abogados.

(e) Encuentre nulo el contrato de obra por la violación a los requisitos de la ley del DACO y el Reglamento de Contratistas;

(f) Provea cualquier otro remedio cónsono con lo aquí alegado.

El 6 de mayo de 2026, Momentum presentó su *Contestación a Demanda y Reconvención.*[2] En resumen, negó las alegaciones de

---

[2] *Véase*, Entrada Núm. 9, SUMAC TPI.

la demanda. Alegó que, actuó conforme a lo pactado en el contrato, y a su vez, que realizó los trabajos de forma diligente y de acuerdo con los estándares de la industria de la construcción. Asimismo, agregó que contaba con personal adecuado y cualificado para realizar las obras contratadas. No obstante, señaló que fueron los recurrentes quienes unilateralmente, de forma injustificada y de mala fe quienes decidieron dar por terminado el contrato y ordenaron su salida del proyecto.

En cuanto la reconvención, reiteró que ejecutó los trabajos contratados de manera diligente, profesional y de acuerdo con los estándares de la industria de la construcción. Dicho esto, manifestó que, a principios del mes de noviembre de 2025, se reunió con el señor Santana para discutir el progreso, las terminaciones pendientes, coordinar los últimos trabajos y calendarizar la fecha de la inspección final o el "*punch list*" que se realizaba en la última etapa del proyecto. Así, adujo que continuó los trabajos, según discutido en la reunión, pero que estos no pudieron ser completados por razones atribuibles a los recurrentes y fuera del control de Momentum.

Sostuvo que, a pesar de su diligencia con lo pactado, el 5 de diciembre de 2025, los recurrentes lo ordenaron retirarse del proyecto aun cuando los trabajos estaban completados a un noventa y cinco por ciento (95%). Por lo cual, solicitó lo siguiente:

a) el pago de $29,050.80 por trabajos realizados y no pagados, más intereses legales correspondientes;

b) el balance del precio del contrato no pagado de $20,218.21 que estaría devengando Momentum Group una vez se completaran los trabajos finales, por la terminación injustificada del proyecto, más los gastos incurridos en la movilización;

c) $3,500.00 que se estiman por concepto de los costos de desmovilización de equipo y personal;

d) los daños económicos causados por la pérdida de ingresos de contratos futuros, clientes y oportunidades de negocio que se estiman en la cantidad de $400,000.00,

e) más intereses legales correspondientes, las costas y honorarios de abogado incurridos.

De otra parte, en esta misma fecha, el señor Roldan presentó una *Moción de Desestimación*.[3] Allí, adujo que de la demanda no se desprendían hechos específicos que superaran la responsabilidad limitada que era consustancial con la formalidad corporativa según lo exigido por nuestro ordenamiento jurídico. Sostuvo que, la responsabilidad limitada de los miembros de una compañía de responsabilidad limitada constituía la regla mientras descorrer el velo corporativo era la excepción. Así, esbozó que dicha excepción se activaba a través de alegaciones de hechos concretos y particularizados que demostraran el uso indebido de la entidad como instrumento de fraude o injusticia.

No obstante, manifestó que de la reclamación no se exponía elemento o factor alguno que justificara descorrer el velo corporativo de Momentum. De igual forma, señaló que las alegaciones fueron dirigidas en contra de Momentum y el señor Roldan, como oficial de dicha entidad y no en su carácter personal. Por lo cual, arguyó que procedía la desestimación de la demanda en su contra al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V R. 10.2(5).

Tras varios asuntos procesales, el 26 de mayo de 2026, los recurrentes presentaron su *Moción en Oposición a Moción de Desestimación presentada por el codemandado Mario J. Roldán del Cueto y, en la alternativa, Solicitud de Remedios menos oneroso que la desestimación*.[4] Mediante esta, alegaron que la demanda no tan solo le imputaba al peticionario responsabilidad por su cargo corporativo sino por sus actos y omisiones propios. Así, argumentaron que la demanda exponía hechos suficientes para

---

[3] *Véase*, Entrada Núm. 10, SUMAC TPI.
[4] *Véase*, Entrada Núm. 22, SUMAC TPI.

sustentar las reclamaciones en contra del señor Roldán en su carácter personal.

En la alternativa, solicitaron que, del TPI entender que alguna alegación sobre la participación personal del peticionario requiriese mayor detalle, que se le permitiera una enmienda o una exposición más definida. Señalaron que, en este caso no habría perjuicio indebido para el señor Roldan, ya que está en su etapa inicial, no ha concluido el descubrimiento de prueba, ni se ha señalado juicio. Además, indicaron que las alegaciones en contra del peticionario surgían del mismo proyecto, contrato, obra, certificaciones y de los mismos hechos operacionales desde el inicio del caso.

Examinado los escritos, el 28 de mayo de 2026, el TPI emitió y notificó una *Resolución Interlocutoria*.[5] En virtud de dicho dictamen, declaró No Ha Lugar a la solicitud de desestimación, por prematura. Asimismo, expuso que una vez concluyera el descubrimiento de prueba, de entenderlo necesario, que se volviera a presentar el petitorio.

Inconforme, el 17 de junio de 2026, el señor Roldán presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **PRIMER SEÑALAMIENTO DE ERROR:**
> **ERRÓ EL TPI AL NO ATENDER LA MOCIÓN DE DESESTIMACIÓN DEL SR. ROLDÁN BAJO EL FUNDAMENTO DE QUE ESTA ES PREMATURA.**
>
> **SEGUNDO SEÑALAMIENTO DE ERROR:**
> **ERRÓ EL TPI AL DENEGAR LA MOCIÓN DE DESESTIMACIÓN, A PESAR DE QUE LA DEMANDA ES INSUFICIENTE PARA ESTABLECER UNA CAUSA DE ACCIÓN PERSONAL EN CUANTO AL SR. ROLDÁN Y DECARTAR LA PERSONALIDAD JURÍDICA SEPARADA ENTRE ESTE Y LA ENTIDAD CORPORATIVA.**

Examinado el recurso que nos ocupa, y con el propósito de lograr el "más justo y eficiente despacho" del asunto ante nuestra

---

[5] *Véase*, Entrada Núm. 29, SUMAC TPI.

consideración, prescindimos de términos, escritos o procedimientos ulteriores. Regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

## II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que

revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR ___ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la

luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios. De otra parte, aclaramos que, mediante esta determinación, no estamos prejuzgando los méritos ni la procedencia del petitorio desestimatorio de este ser presentado una vez concluido el descubrimiento de prueba.

IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones